JP Morgan Chase Bank Good afternoon, Mr. Bergstein. Good afternoon, Stephen Bergstein for the plaintiff appellant. The District Court erroneously dismissed the complaint for failure to state a claim for national origin discrimination. Why is that so? Because John Wolfe played a central role in the plaintiff's termination as the same person and the only person at the workplace who persisted in complaining about the plaintiff's accent. She was from Trinidad. This was a pro se complaint, so we take that for what it is, but we take it as true that he expressed, quote, clear anger and annoyance about her accent. He was the only one to complain about her accent. Nobody else in the workplace had an issue with it. And, Mr. Bergstein, what do we do with the fact that Mr. Wolfe was also the person who recommended against terminating her twice when she committed fireable offenses? How does that factor in to an assessment of whether there is any possible finding of pretext here? Because he ultimately recommended her termination. Now, that evidentiary issue might be relevant at trial to impute an innocent motive. But for now, we're not even at summary judgment. We're at the Rule 12. And under Rule 12, even the district court recognized that Wolfe is primarily responsible for orchestrating the events resulting in her termination. So we have cases on this. We're not asking this court to break ground here. This court held in Bart. This court held in Bickerstaff. If the discriminator is a central participant in the adverse action, and that's what we have here under the complaint, then you can draw the inference that the plaintiff was terminated because of her national origin, even if there is a facially neutral reason to let the plaintiff go. We have that in Bart. This case is not significantly different from what happened in the Bart case, except we're at Rule 12 here. We don't even have discovery on the national origin discrimination. So when somebody, when there's an allegation about somebody having trouble understanding an accent, I guess we, like courts say, that you need to have some allegation that shows it's not a bona fide trouble understanding the accent, but it's actually discriminatory animus. You're saying because nobody else, she alleges that nobody else had trouble, that means that it must have been discriminatory animus? Is that the inference? A little more than that. That every, nearly every time we spoke, the plaintiff says, he complained he couldn't understand me because my Trinidadian accent. He said so with anger and annoyance. No one else had a problem with this. So the inference is her accent wasn't that bad. And the problem wasn't her. The problem was him. He had an issue with people with this accent. So when we look at the cases on accents and national origin discrimination, you know, there are cases that say, well, if you simply ask somebody to clarify themselves, that's not really discrimination because it's an innocent inquiry. And then you have that avenue, that area of cases of mocking and ridicule. This case falls much closer to the mocking and ridicule cases than the innocent inquiry. You know, can you say that again? I didn't understand what you said because of your accent. So, you know, for purposes of Rule 12, you know, we can make out, we don't, we can make out a prima facie case. It's mocking because he was annoyed? It's closer to mocking and ridicule than an innocent inquiry about clarifying yourself. If he mentions it every single time, nobody else brings it up and he's annoyed. You know, for Rule 12 purposes, especially considering the minimal burden we have on making out a prima facie case, and there's lots of ways to make out a prima facie case. Supreme Court said that last year in the prima facie case ruling. You know, this gives rise to an inference of discrimination. And, you know, there hasn't. We don't have a summary judgment record. There is a summary judgment record on the other claim. On the ABA claim. Right. So, and that leads to a finding that there was a legitimate reason for the termination. But you're saying because this claim was dismissed, on a motion to dismiss, like we have to pretend as if that didn't happen. Is that right? We can't, it's not relevant at all? I wouldn't say it's completely irrelevant. What I'm saying is even if, say, even if we accept their reasons as legitimate under BART, under the other cases, we don't have to show pretext as long as we have independent evidence of discriminatory intent. Let me see if I follow. What you're saying is something like the summary judgment ruling that we have effectively says that on this record, no reasonable jury could find that the reasons given were pretext for disability discrimination. Now, it may seem, a follow-up question would be, but that, you know, is cutting, slicing the bologna really thin if there were really good reasons for firing the person. But you're suggesting that had the national origin claim not been dismissed at the outset, there would have been discovery possible that was not relevant to the disability discrimination into things like you could have deposed all of the subordinates at the bank or anybody else who had interactions with her as to whether there really was any difficulty understanding her accent, for example, or you could have inquired into something else about Mr. Wolf's possible biases against people of West Indian origin that wouldn't be relevant to the case as it was litigated. That's the argument. But we don't really know whether if there was a lot of discovery taken, in other words, if we can get past the plausibility of the allegations at the first place and say that that was error, then there could have been a different record created with respect to national origin discrimination that might call into question a decision that said this was not pretextual when that was a decision that was not a pretext for disability discrimination. That's the argument. But I would add that the Title VII burden is a motivating factor, not but for. That's another difference that the Title VII issue is at least a little more favorable to the plaintiff than the disability. That's what happened in BART. Now, you did mention discovery might explore other targets of the supervisor's national origin animus. This is not in the brief, but it's in the record. But I do want to point it out as I prepare for this. Her sworn State Division complaint is in the record, page 62. She quotes him disparaging customers from Trinidad. I guess it was a neighborhood with Trinidadian clients, claiming he can't understand them and he thought the neighborhood was dangerous and he feared for his personal safety. That's also evidence that would be explored in discovery. So it wasn't just an issue with the plaintiff's accent. It was an issue he had with people from Trinidad. All right. Thank you. Good afternoon, Your Honors. May it please the Court. My name is Shira Blank from Epstein, Becker & Green, appearing on behalf of appellee J.P. Morgan, Shays Bank. Your Honors, the true question presented here is this. Can Ms. Matthew state a claim for national origin discrimination based on a throwaway allegation in her amended complaint that John Wolfe, her manager, complained that he couldn't understand her, allegedly because of her accent? What counsel referred to previously was actually from Ms. Matthew's affidavit. And I would like to read to Your Honors what appears in Ms. Matthew's amended complaint. Sorry. She writes, I believe I was treated differently because of my race, gender, and national origin because of the way Mr. Wolfe spoke to me and complained he couldn't understand what I was saying because of my accent. That's all. That's not mocking. That's not ridiculing. But even... Complained about not being able to understand me and they don't, do not share the same national origin. So I don't know. If nobody else has a problem, does that allow for inference that it wasn't a vodified difficulty understanding? Well, she also references Ms. Kang in her affidavit, Your Honor. And there's no allegation that Ms. Kang couldn't understand her. Now, looking at that affidavit, which Your Honors don't even have to accept, here's what she doesn't say, that Mr. Wolfe mimicked her, ridiculed her, criticized her accent, and made the decision to terminate her because of her accent. She doesn't allege that any of the disciplinary action that was imposed on her had anything to do with his view of her accent or that any of these comments were made when he was implementing this disciplinary action. She specifically says that all of Mr. Wolfe's actions here related to her disability discrimination claim. And that's what was dismissed by District Judge Hall. I apologize, Your Honor. May I just have one moment? So here's what she did not say in her affidavit. Well, here's what she did say, that Mr. Wolfe resented her requests for help. But she tied that to her hypertension, which was already dismissed on summary judgment. She claimed that Mr. Wolfe was agitated by her request for sick leave. That claim has been dismissed. She claimed that Mr. Wolfe requested her termination while and because she took sick leave. And yes, judgment actually, she does say that Mr. Wolfe was the only person who couldn't understand her. But by her own admission, he's not the only person who opposed discipline on her. You raised this earlier. Anna Kang, who she also references in her affidavit and who she originally named the defendant in this action, was part of this process of imposing discipline on her. And to the other point that was made, Judge Darcey Hall already found that her termination was not discriminatory. It was based on a myriad of performance issues, which she never contested. Those are undisputed facts, which are now in the record. And requiring those to go... But isn't it an unusual thing to try to pull in discovery that was related to another claim after this claim was dismissed and try to use that to bolster your position? You know, you have your position, obviously, regarding the motion to dismiss. But to say we should look at that and reach a summary judgment conclusion, even though you didn't get discovery, that's a pretty unusual thing to ask for. Agreed, Your Honor. But Judge Darcey Hall's decision was very focused specifically on what she referred to as the discriminatory discharge. She didn't say that there's no evidence that Ms. Matthew was terminated because of her disability. She said that there's no question that her employment was terminated because of the myriad of performance issues, including two written warnings, which she never contested, her branch being put on a final warning, all under her auspice as the manager. And the other thing I want to mention, Your Honors, there is no case law that says that not being able to understand someone because of their accent is sufficient to state a claim for national origin discrimination or for a hostile work environment. All of the cases that counsel cited to in his brief contain something else, either more than mere annoyance. For instance, the claims are that the manager was ridiculing or mocking or mimicking an  That's not what's being claimed here. Expressing an inability to understand someone because of an accent is not discriminatory and neither is expressing annoyance, or we would all have big problems. Here, in the cases that Ms. Matthew cites, she's citing the cases where the plaintiffs are claiming their supervisors ridiculed their accent when they spoke English. Cases where the plaintiff was being mocked and that the managers were pretending not to understand them and creating an abusive work environment. And yes, they plead that there was some anger, but we submit, Your Honors, that pleading that somebody is angry is a conclusion. And without any underlying facts to support that, none of which are pled here, that does not make a claim for discrimination. And in cases that Ms. Matthew cites, like Duarte, there's not just anger. There are affirmative comments that relate to the national origin, such as go back to wherever it is that you came from. That's very different from anger or he doesn't understand me. And the second piece, Your Honors, is there's no question here that Ms. Matthew in both her amended complaint and in her affidavit does not tether the comments about her accent to any adverse decision. She's not claiming that this is why she was terminated. This affidavit that Ms. Matthew put together in opposition to our summary judgment, to our motion to dismiss, which does attempt to change or maybe correct her testimony at the State Division of Human Rights, she devotes one paragraph of a 39-paragraph affidavit to her national origin claim. All of it is devoted to, all of the rest of it is devoted to her disability discrimination claim. And if I may read it to Your Honors, in that affidavit, which is Appendix JA-488, she says, he informed me in nearly every phone call, both in person and on the phone, that he could not understand me because of my Trinidadian accent, and he expressed clear anger and annoyance that I spoke with an accent. But that's all. She's not claiming that this is the reason she was terminated. She's attributing her termination to Mr. Wolfe's annoyance with her requests for sick leave. She's not claiming that any of these comments were made when disciplinary action was being taken against her. And that technically is part of the four corners of the complaint, because in the affidavit, she is referencing that disciplinary action. She's not claiming, he told me he didn't understand my accent, and that's why I'm not doing well, and that's why I'm being put up on a written warning. And in all of the cases that Ms. Matthew cites, too, there is some personnel action that accompanies those allegations regarding the accent. For instance, a failure to promote somebody because of a thick accent, where in one of the cases, Rivera v. Baccarat, the plaintiff was told that the manager didn't like his accent in a meeting in which he was being evaluated. There are cases where somebody was demoted because of their accent. There's no link here between these claims regarding the accent and any adverse action that was taken with respect to Ms. Matthew. And just because Judge Lynch had made some – had asked some questions about the law of the case, the fact is that Judge Darcy Hall made findings on undisputed facts, and there were no disputed facts, material facts here to be explored on some – there are no disputed material facts regarding any of her discipline or her termination. That same logic would apply here with respect to her national origin. There is no question here that her discharge did not occur under any circumstances giving rise to discrimination or an inference of discrimination. And importantly, Your Honors, Ms. Matthew hasn't appealed that decision. She hasn't appealed the decision finding that her termination was not discriminatory. She could have appealed it. It seems as though originally she was going to appeal it. But is that decision – I mean, is it proper to interpret that summary judgment ruling as an absolute there was no discrimination when the only claim that was before the court at that stage was whether there's discrimination on the basis of disability? So the argument is you look at the record and you say, well, here are the good reasons they had. There's very little that supports any kind of claim of disability discrimination, so it's not a pretext for that. So dismissed. But there's no reason why Darcy Hall at that stage of the case would even be thinking about national origin discrimination or any evidence of national origin discrimination because that claim had been dismissed at the pleading stage. Well, respectfully, Your Honor, first, I believe that Ms. Matthew tried to sneak in some national origin discrimination in her opposition to her summary judgment brief. But regardless, Judge Darcy Hall's decision specifically said there is nowhere in the record regarding Ms. Matthew's disciplinary event a suggestion that they were a part of anything but plaintiff's unsatisfactory performance. And it's this unsatisfactory performance that she's never going to be able to get past, even if she's able to get any discovery on her national origin claim. And requiring Judge Darcy Hall to look at the national origin claims would either require her to affirm the same decision again or possibly reverse herself, given the factual findings that she's made. Well, Your Honor, again, I think Mr. Bernstein's position is, we just go back to square one. This shouldn't have been dismissed at the pleading stage. And now we can have discovery. And then we'll see. There may be a different record when we get to summary judgment on that claim. I guess that's his argument. And respectfully, what I would respond to you. It seems unlikely, given the strength of the record on the other side. Well, that's exactly right, right? Two written warnings, one that John Wolfe was not even involved in, for very, very serious policy violations. In both instances, Ms. Matthew could have had her employment terminated. John Wolfe, in both instances, cut her a break. She agreed that those were adequate for, you know, she could have been fired. And the other piece is, and she references this in her affidavit, so I want to be clear that I'm not necessarily going beyond the four corners, that other people at the bank contributed to the decision to fire her. In any bank, there's not one person who makes the decision to terminate. They can recommend termination. But part of the issue with Ms. Matthew's performance was these consistent issues with respect to serious policy violations that were being found at the branch. And she's not claiming that any of the people who were involved in those decisions were discriminating against her or made any comments about her accent. So, you know, respectfully, Ms. Matthew was terminated in 2013. She's asking for a fifth bite at the apple to try to sustain her claims, which have been dismissed at every stage. And there's already a record here supporting the failure to be able to show that discrimination or retaliation or anything else entered into the decision to terminate her performance, to terminate her employment.  Thank you. The ad today absolutely supports her claim. She emphasizes Wolf is the only one who complained about my accent. And he expressed clear anger and annoyance to me when I spoke with that accent. That's essentially direct evidence. So, you know, it's... I don't know. So what about... So if the idea is there's a difference between a bona fide inability to understand an accent and evidence of discriminatory animus. So you have to allege something beyond inability to understand the accent. Why wouldn't the annoyance at not being able to understand an accent just be a feature of not being able to understand an accent? And so the pleading standard would be you have to allege something that shows discriminatory animus as opposed to just something that is you would normally expect with the inability to understand. Because nobody else had a problem with it. See, that question assumes that she's admitting at a deposition, yes, I have a difficult accent. It's hard to understand me. That's not the way we interpret Rule 12. We interpret Rule 12 most favorably to the plaintiff, especially pro se plaintiff who writes it up. That's a pretty low bar, right? If you... Enough to go past the pleading stages, this supervisor was annoyed at my accent. He was the only one. You're essentially saying that's enough for any plaintiff to pass the plausibility or get discovery. That's a pretty low bar, right? And express clear anger and annoyance to me that I spoke with an accent. How do we interpret that? But I'm going to ask you to point out that's a feature of, right, of not understanding somebody could be annoyance, right? But this Court says we don't draw inferences on a Rule 12 motion. I guess you could draw the inference that he was annoyed because he genuinely couldn't understand her or he was annoyed because he doesn't like the accent because nobody else complained about it and he has a problem with her. Remember, you know, this is not post-trial. This is not even summary judgment. This is the complaint. We interpret the complaint favorable to her. If there's a contrary inference, we worry about that. But you agree that there needs to be something beyond the inability to understand, right? Because the mere inability to understand is not evidence of discriminatory animus. So if it only said he couldn't, he said he couldn't understand and he was the only one, that would be insufficient. So you are saying that the anger and annoyance is what tips the scale from bona fide inability to discrimination. And the fact that nobody else had a problem with her accent. You know, why is it? I was saying, if he said I don't understand and you allege that he's the only one, you think that would even be enough? I think we're heading in the direction of singling her out because of her accent. If nobody else had a problem with it, he has a problem with it. What's going on here, right? Was it that bad or he just doesn't like the accent? But then you throw in the anger and annoyance, right, on a Rule 12. This is now we're heading in the direction of hostility on the basis of national origin. It really would, as an evidentiary matter, it's comparable to direct evidence. So, you know, you don't have to show that the accent objections related directly to job performance. And I thought I heard a few minutes ago that this Court shouldn't consider the affidavit on a Rule 12 motion. This Court does consider the affidavit on a Rule 12 motion if it's a pro se. This Court said so in Walker v. Schultz, Gill v. Mooney. It's a sworn statement. I don't think she said that. But anyway, we have the arguments. We appreciate you both coming in. Thank you.